Good morning, everybody. We're ready for the first case this morning, the Design Basics v. Kerstiens Homes & Designs. Mr. Ledoux, you may proceed. Thanks, Your Honor. Good morning, and may it please the Court. I'll start us off by discussing the issue of substantial similarity. When granting summary judgment for the defendant Kerstiens on the issue of substantial similarity, the District Court misapplied this Court's holdings in Lexington Homes in two ways. First, the District Court did not focus on protected expression, as Lexington Homes teaches, and second, the District Court did not take a close look or give any credit to Design Basics' evidence proving similarities at the level of protected expression. Lexington held that when analyzing substantial similarity, District Court should focus only on protected expression, which means that before comparing the similarities and differences, the District Court should make some effort to separate the protected expression from the unprotected elements of the plaintiff's copyrighted works. Mr. Ledoux, before you go too far down that road, I want to clarify, are you asking us to overrule or modify Lexington Homes, or are you saying you accept that framework and the District Court still erred given that framework? The latter, Your Honor. Lexington Homes came out right before we briefed summary judgment in this case, and from the very beginning, we've tried to build our evidence and make our arguments based on this Court's holdings in Lexington Homes, including this one, which says that the District Court should focus only on protected expression. The District Court decided the issue of substantial similarity as a matter of law by focusing only on the differences in the party's plans. Mr. Ledoux, how do you determine in this arena, and by arena, I mean mass marketing single-family homes, which are millions of them out there, how do you determine in the first instance what is protected? What's the protected work or protected expression? Because there's not a lot of room, I think you would agree, or maybe not, but not a lot of room in this arena for originality. I do disagree with that a little bit, Your Honor, and let me be specific. There are certain styles of family homes that have conventional design features. For example, in the Zalewski case, the Court was working with colonial homes, and the Court decided that there was no infringement there, no substantial similarity, because the similarities were all dictated by the conventions of colonial home designs. And there wasn't any evidence like that in this case. There was no evidence to prove that design basics homes in this case followed any particular style of single-family home. And what we tried to do in this case, Your Honor, is present specific evidence of uncommon original design features that were copied in Kirstein's homes. So we tried to answer that question with evidence in the District Court. For example, Your Honor, with our Brittany plan, which was copied by Kirstein's 706 and we identified in interrogatories 55 similar design features between those plans. And then we took it a step further, and we identified 15 shared design features that appeared in Kirstein's 706 plans, but did not appear in any of Kirstein's 70 or so non-accused plans. And then we took it one step even further, and we identified four original uncommon design features, combinations, and arrangements that are not found not only in Kirstein's plans, but in a sampling of 6,239 similar size Stockholm plans that we took off a popular plan broker website. Let me give you one example of that. When you walk in the front door of Design Basics Brittany, you walk into a two-story open foyer. To your left is a hallway that leads back to the master bedroom. Right to your left in the open foyer, there is a U-shaped switchback staircase that takes you upstairs and then back down in basically the same space. Once you get upstairs, there's an angled balcony that cuts across diagonally in the other direction that overlooks the two-story foyer. That is an original uncommon combination of design features that appears in Design Basics Brittany plan and Kirstein's. How do we know that's original and uncommon? These are track homes. There's only so much you can do. So first of all, we tried to demonstrate that it was original and uncommon by showing 6,000 plans that did not include it, but there was also the opportunity for Kirstein's to rebut it and come forward with just one single plan that had that same combination of arrangements and they didn't. Although the burden of proof is on you, so don't shift the burden on that. The burden of proof is on you to establish it's original. As far as the question between original and protected, I think if this court adopts the 11th Circuit's holding in CompuLife, once we've showed that there are shared design features, actually the burden shifts to the defendant to prove that those design features are unprotected. But we've never adopted that standard. You haven't, Your Honor, but it's suggested otherwise in Lexington homes. I don't know that the court addressed that issue in Lexington homes. The court decided that based on the evidence that was available in that report. But in this case, we presented sufficient evidence from which a reasonable jury could infer that Kirstein's copied the protected expression in our plans and that's what we needed to do to get past summary judgment. But the district court didn't give design basics evidence of substantial similarity any credit at all and didn't even look at the particular protected expression that we tried to identify. Instead, the court just simply counted the differences and then dismissed design basics evidence of substantial similarity summarily, basically holding that all of the similarities in design basics and Kirstein's plans existed only because, quote, the party's home plans resemble common home designs that one might observe throughout the suburbs of Milwaukee, Chicago, Indianapolis and other communities. And Your Honor, that conclusion was reversible error for two reasons. First, the district court did not construe the summary judgment evidence in the light most favorable to design basics as Rule 56 requires. Second, the district court's conclusion wasn't supported by any evidence in the summary judgment record. There was not any evidence showing the common design features or conventional design features that appear in, quote, common home designs observed throughout the suburbs of the Midwest. Mr. Ledoux, let me ask you this question. One impression I have from hearing your argument in your brief and trying to think about it through the prism of the district court's analysis is that, you know, you might be right when you point out the couple of features that you did with Britain, with the Britain design. But what is on my mind when you make that argument is I'm wondering whether you're cherry picking. And I think I think I understand your question, Your Honor. And let me answer it this way. The Supreme Court held in Harper and Roe Publishers versus Nation that quantitatively insubstantial copying is still actionable if it's qualitatively substantial. So copying is not excused because it is insubstantial in the infringing work. In other words, in a case like this one, where design basics proved that Kirstein's copied specific protected expression from design basics home home designs, the differences in unprotected elements shouldn't get Kirstein's off the hook for copying. And Harper and Roe. Those lines, though, so if you if you're able to say based upon the diagonal hallway in the U shaped stairway, set everything else aside, just ignore it. We should have a trial on that alone. Is that is that the contention? No, Your Honor. We were giving that as an example of protected expression that's copied in Kirstein's. No, I know. But when for someone when I when I read the district court's opinion, right, she she outlined a whole bunch of differences. Right. I mean, page after page after page. And your adversary highlights those differences. And my question is one of measurement. If if you are finding something that is unique, that's protected expression, how do you know when there's enough to call it a jury question? I think the question the question on the issue of substantial similarity is did the defendant copy protected expression and design basics plans? I don't think we have to prove that Kirstein's copied all of the protected. No, but that's just restating the question. But if you say it right, if you say is the diagonal hallway in the U shaped stairway enough on Britain vis-a-vis 706 and 706 are and therefore let's have a trial. I think that one at least gets you to the jury, your honor. I do believe that, you know, let's take, for example, that Harper and Rowe case. That was a case involving President Ford's unpublished memoirs. He had made a deal with Harper and Rowe to publish his book. And in the magazine, the nation's got a hold of the unpublished manuscript and took 300 words out of it and copied those 300 words in an article that was 2500 words long. And what the Supreme Court said was, you know, even though that was an insubstantial part of President Ford's book, and it was only a small portion of the nation's article, it was copyright infringement. But what Lexington Holmes tells us is that that's not the appropriate analogy for the architectural context. When you're dealing with track homes that are mass produced throughout the country, that it has to be something different. And so to pick up on Judge Scudder's question, what's the appropriate test that we should give to district courts in applying the substantially similar test in this arena, or that we should instruct the juries on in this arena? It can't, where's the line? But I think the line and the instruction for the jury is the ordinary observer test, Your Honor. But the court can also pick up on what Lexington Holmes talked about as far as separating protected expression and unprotected expression. Let me go back to your, I'm sorry to interrupt, Mr. LeDoux, let me go back to your ordinary observer test. Ordinary observer of what? Where, when is substantially similar enough? When does dissimilar, are all the differences trump substantially similar? What's the test? So again, the focus would be on the differences or similarities in expression. And the ordinary observer test as it's written is whether an ordinary observer could detect the differences if you didn't set out to look for the differences. And that's up to the jury. But in separating unprotected expression from protected expression, doctrines of sens affaire and merger are things that the district court could instruct the jury on. And then the defendant would be, you know, free to prove that for like, for example, in Zalewski, the defendant there offered into evidence a book that showed the conventional design features of just following the design conventions of a colonial home. And what was unique? I think one of your adversary's points that I'd like to hear you respond to is that that very exercise is extortionate in this context. That when you're dealing with, as Judge St. Eve is pointing out, kind of track homes with an awful lot of similarity to put architects and other firms to trials in this situation is just going to extract and extort a settlement out of them, which seems to be, at least as we observed in part in Lexington homes, some of the design, you know, of the plaintiff's operation or, you know, business goals and practices these days. How do you respond to that? That they say there's no reality in a trial. We're just going to settle. And that's the whole reason you brought the lawsuit. Well, there's two points there, Your Honor. First of all, there's no evidentiary basis to presume that my client is really just out for a quick buck. This case is a great example. Hold on. I thought Patrick Carmichael testified in the record in Lexington homes that design basics was relying in substantial part upon the proceeds of settlements for its revenue streams going forward. That is absolutely not the core business of design basics, Your Honor. Is my recollection of what we said in Lexington homes accurate or inaccurate? Your recollection of what Lexington homes said is accurate, Your Honor. But the record in this case shows, provides a lot of information about design basics legitimate business, first and foremost, as a, you know, a creator and marketer of custom home design. Now direct the court's attention to the information that is included on our short appendix in the district court's decision at RSA 003 and RSA 004. For example, the district court noted that based on the evidence, design basics has 164,000 customers, 145,000 licenses. Design basics currently offers single family home licenses or more than 2,800 plans that range in licensing fee from 700 to $6,000. Since 2009, design basics has issued 8,272 licenses for its homes designs, making more than six million dollars. Does the record show in more recent years what percentage of the firm's revenues come from litigation settlements? I don't believe that information is in the summary judgment record, Your Honor, but it does. Is that in the fees record? I don't think so, Your Honor. I don't believe that those percentages were included at all. But for example, the record does show RSA 004 that in the last three years, design basics has issued 2,500 licenses for its custom home plans. Your Honor, your only question- Is there any, I'm sorry to interrupt, those licenses that were issued in the last three years, is there any information in the record about how many of those came as a course of settlement as opposed to were purchased? No, Your Honor, there isn't. Not that I'm aware of. And one last point. Both Lexington and Zalewski make reference to this idea, and Your Honor, the courts touched on this today a couple of times, the idea that in this field, there should be only thin copyright protection and only very close copying. And I would like to ask the court to take a close look again at Zalewski and what it said about that, and also what this court said about it in Lexington Homes. In the quote from Lexington Homes was, quote, when an architect hews closely to existing convention, the architect's original contribution is slight, and his copyright is thin, so that only very close copying could take whatever belongs to him. I think the idea there is, if you're designing a particular style of home, for example, the colonial home in Zalewski, or in Lexington, there was evidence in the record through Dr. Greenstreet's expert opinion that he considered Design Basics homes involved in Lexington as, quote, unquote, traditional homes that had particular design features. Dr. Greenstreet did way more than just identifying the differences. But in this case, the evidentiary record includes absolutely no proof that either Design Basics or Kirstein's was hewing closely to an existing design convention for any particular style of home. I've heard the words today, stock homes and track homes, but there are no particular design conventions for a, quote, unquote, stock home or a track home. If there were, and if these features were so common and prevalent, then we would have thought that Kirstein's could have come forward with at least one single design, one single home plan that showed that, for example, the angled balcony over the two-story foyer in the Brittany appeared in any other home besides Design Basics' Brittany and Kirstein's 706. They didn't present any of that evidence. So if it is true that these are just common features you can find in any suburban home, you would think Kirstein's could have presented multiple examples, but they didn't. And without that kind of evidence, there's at least an issue that gets this case to the jury. I'm going to reserve my last minute for rebuttal. Thank you. Thank you, counsel. Mr. Wilberhouser. Thank you. May it please the court. Lexington Homes provided a framework for determining substantial similarity, a framework that focuses on the differences between the copyrighted plans and the accused plans. And Lexington confirmed as a matter of law in that case that Design Basics had not proffered sufficient summary judgment to raise a material issue of fact on the issue of substantial similarity. In this case, the district judge faithfully applied Lexington Homes. She cited Lexington Homes 11 times in her summary judgment opinion, and she concluded that as in Lexington Homes, Design Basics had not proffered sufficient summary judgment to raise a material issue of fact on the issue of substantial similarity. Since Lexington came out, it has been applied by many other district judges in the Seventh Circuit and in other circuits. Lexington has become an important case with significant precedential value. It didn't turn out good for Design Basics, which is why today Design Basics is coming into this court and asking for a duo. Just when all the judges in the circuit have become familiar in Lexington's principles, Design Basics is asking this court to ignore stare decisis and adopt its so-called two-step approach for determining substantial similarity in summary judgment. Now, it claims this two-step approach is consistent with Lexington. I don't agree, and I think during Mr. Ledoux's presentation, he acknowledged that the CompuEye case that he came out of the Eleventh Circuit a little bit earlier this year, resorts to what some circuits have called the abstraction filtration comparison test. The Seventh Circuit has never adopted that methodology, and adopting it now would be inconsistent with the holding of Lexington. This court should not discard Lexington, and it should not consider Design Basics' two-step approach for at least four reasons. First, Design Basics waived the argument. It never made the argument about its two-step approach in the Second, stare decisis. As a matter of policies, courts should be consistent so that judges in the circuit that have been relying on this court's cases can make predictable decisions. Thirdly, Design Basics' two-step approach, it does shift the burden of proving copyrightability from the plaintiff to the defendant. The plaintiff in this case is making arguments under the Architectural Works Copyright Protection Act, which specifically carves out from protection standard features in homes. According to Design Basics' proposed methodology, it does not carve those out as a part of the substantial similarity analysis. The fourth reason is, you know what? Even if this court did adopt Design Basics' two-step approach, Kirstein should still win. Why? Because Kirstein's was the only party that submitted an expert declaration on the issue of whether the features Design Basics alleged were infringing were, in not subject to protection under the Architectural Works Copyright Protection Act. Mr. Overhauser, I have a question for you. How do you deal with this issue that, at least is on my mind, where there seemed to be kind of a sea of similarities? The district court, as you know, outlined several examples of where this is like that and this other thing is like that too, just one similarity after another. But Mr. Ledoux makes a point that, well, what if Design Basics is able to point not so much to the ocean, but to a particular couple of features in the Brinton design that do appear, in his view, unique? How does the law go about that measurement? That's a good question. Even if there are such features identified, the court can still find that there hasn't been a sufficient issue of fact as to substantial similarity raised. Let me give you an example from another recent copyright infringement case. In this case, it's the Blaney versus XYZ Films case. It was out of the Eastern District of New York a few months ago. The movie opened with a scene shot in front of a subway stop in which there was a mural on the wall of the building behind the subway stop. The artist that drew that mural found out about it and sued the copyright infringement, even though the movie only had that mural in the movie for four seconds. The court threw out that case because any similarity was de minimis as a matter of law. Now, in that case, as with any de minimis case, copyright case, or many, many fair use copyright cases, there's no dispute that the mural on the wall was copyrighted. There was no dispute that it had been copied. It was just that as a matter of law, the movie was not substantially similar, just as in this case, just because if Mr. Ledoux can point to a U-shaped staircase, that can still be so de minimis as to not be sufficient to raise an issue of material fact as to whether there is substantial similarity. Well, how do you know that? I mean, it's one thing for a mural to be shown for four seconds, but it sounds to me like, I mean, what he's arguing is that the entryway to a home and the, you know, exposure, the balcony looking down and this kind of, you know, unique angle of the hallway, et cetera, that may be enough. That's not, you know, the laundry rooms right off the garage and some of this kind of boilerplate stuff and home after home. Well, the good, what we did, what the defendants did in this case was they served contention interrogatories on design basis, the derogatory number five, and there's a copy and excerpts of our brief in which we asked them to identify every copyrightable feature that they claimed had been copied. And they gave us a long laundry list of things for each element. And these are... Is that that bullet point list you have in your brief? It is, Your Honor. That is at page 15 of our brief. And they would list things like the front door is in the same location, the foyer location, the foyer size. Well, these are all things that are standard features, just like a U-shaped staircase is a standard feature. And in response to design basics, contention interrogatory, we got an expert declaration that went through these bulleted lists by a builder, the defendant in this case, who had built 1,200 plus houses throughout his career. And he testified as an expert that, yeah, these are all standard features. And because they're standard features, they are excluded from the scope of protection under the Architectural Works Copyright Protection Act. Now, perhaps... Does the standard... Sorry to interrupt. Does the standard feature versus protected expression come down to expert testimony? Is that what you're arguing? Not entirely. I mean, what I'm saying is that... So, how would... If it doesn't come down to expert testimony, how is a court or a jury supposed to differentiate between the two? What's the test, other than an expert says so, or a battle of the experts? Well, you're asking two different questions when you ask how a judge may decide and how a jury may decide. No, I'm asking the same question in terms of what's the test that either the judge at summary judgment should apply or we should instruct a jury on. What's the legal test for determining that? The legal test for substantial similarity is one that is included in the pattern jury instructions for many courts. The Seventh Circuit has its own. It's frankly not all that detailed. The Ninth Circuit has what I think is a pretty good list of... Pretty good jury instruction on the issue of substantial similarity. And the reason theirs is one that is used by a lot of courts is because they have separate subsections for different types of works, ones for musical works, movie works, software, so on and so forth. And I think this court is free or courts are free or judges are free to craft a jury instruction with regard to what substantial... How substantial similarity needs to be applied. What would be important... And that's what I'm asking. I'm not asking where to find it. I'm asking legally, Mr. Overhauser, what should that test be? And then the second question is if for the standard feature versus protected expression in order to prove it, do you need expert testimony? But the first question is what is the test? Not where, not look to jury instructions. What should the content of those jury instructions be? I'm not sure I can give you a good answer to that off the top of my head. I didn't expect that as a question. I apologize. Then what should we be telling courts that they should apply in these cases? I think that this court did a good job in Lexington providing a framework for analyzing substantial similarity. It went through and described in detail its thinking. But to be honest, what I found was, what I think really puts the determination of how to determine substantial similarity in contents is this part of Lexington. The pages that it appended to the end of its opinion that show the copyrighted work and the accused work. And I think that judges can refer to those pictures and take guidance from the language of Lexington Helms in terms of how to apply it to determine whether there's a threshold level of substantial similarity. So if you have similar features and you have dissimilar features, how many different features are enough that it's not substantially similar? I'm not sure there's a good answer for that in the abstract, Your Honor. I just, I can't say. I don't think there is a specific number. Just like with many issues in the law that are turned over to the jury or that a judge has to consider whether they raise to a sufficient level to create a material issue of fact, there is some degree of judgment involved. But what we do know is that at least in the Lexington Helms case, if the plans look like this, there's not enough similarity to make a substantial issue of material fact. Mr. Oberhauser, do you agree that one of The bullet point list that came in response to the contention interrogatory makes a mess of this. Because it doesn't focus on, it doesn't focus on the U-shaped stairway and the balcony and the doorway, right? It gets us bogged down into the kitchen size, the laundry room location, the laundry size, the living area size. And I don't know how you sort through this. The lawsuit's not brought based upon the foyer, the unique design of a foyer. It's brought based upon a zillion other things that seem completely common if you were to go house-to-house through the neighborhood. Well, I agree with you. But if you're a defendant that has been accused of copyright infringement under the Architectural Works Copyright Protection Act, all you can do is go to the plaintiff and say, what is it that you claim I copied? From my client's perspective, he never, you know, and he submitted evidence, he never had access to any design basics plans. We need to rely on the plaintiff to tell us, what do you claim is copyrighted and that you claim has been copied? And this is the list that came from design. No, it's not. I know you didn't draft it. I get that. It's just very hard for me to look at that list, not read our opinion in Lexington Homes and think the lawsuit is abusive from the very get-go, because it's not about the foyer, etc., etc. And that's the biggest difficulty that I have with this. Well, I agree with you, Honor. I agree with you. But as the evidence that we cited in our response brief demonstrates, it's been a very good business for design basics to pursue. I'd just like to point out a couple of final issues, and that is, if this court decides to, I don't know if it would be abandoning Lexington or at least substantially modifying Lexington to adopt Mr. Waddu's proposed two-step approach, this court will still have more work to do on this case, and that's because the standard of de novo. Here, the defendants proffered substantial evidence on lack of access and independent creation. The district court never reached those issues, and that's because it found a lack of substantial similarity dispositive. But if this court decides to alter the outcome on substantial similarity, it's going to have to go back and make a ruling on the issues of lack of access and independent creation. We think that either of those grounds is sufficient to have granted the defendant's summary judgment in this case. In closing, I also note that design basics identified as an issue on appeal, whether or not the attorney's award was reasonable. Kirstein's response brief explained that this issue is subject to a review for abuse of discretion. Design basics' reply brief did not make any counter-arguments. Unless the court has further questions, Kirsten's will rest its arguments on the briefs. Thank you, Mr. Olivas and Mr. Waddu. Judge Scudder, I'd like to address your point about the interrogatory response. That interrogatory response was prepared before we had the guidance from Lexington, and then after the guidance from Lexington, we presented evidence that made it all about the foyer. For example, that switchback U-shaped staircase and the angled floor, all of that is in the record in the lists and graphic depictions of non-standard features, which were in the records. Where can I find that? ECF document number 147-46, pages 5-8, where that particular design feature was specifically called out, and then all of those more narrow, unusual, you know, uncommon original design features, we compiled them in an appendix to our summary judgment motion for the district court, and those are included in ECF document number 150-1, and the foyer in particular is mentioned at pages 14 and 15. And then, Your Honor, in Mr. Kirstein's deposition, we asked him specifically about the angled balcony over the two-story foyer in his 706 plan and Kirstein's Brittany plan, and he testified, contrary to his declaration saying that all similar features were standard, he testified that the angled second floor balcony over the two-story foyer is, quote-unquote, unique, quote, non-standard feature, and he agreed, quote, you don't see that in most homes. You can find that testimony, Your Honor, at ECF document number 147-32 at pages 52 and 53 of 142 of Mr. Kirstein's deposition testimony. This is the only evidence that Kirstein's presented to show that these were standard features was Mr. Kirstein's testimony, and he contradicted himself multiple times in his deposition, including on this open foyer with the angled balcony that you touched on, Judge Scudder. That goes to his credibility. It goes to the credibility of that evidence. That's a jury question, Your Honor. That issue goes to you. Thank you. Thank you. Thanks to both counsel, and the case will be taken under advisement.